IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES M. FITZPATRICK,  :  No. 3:03cv836
           Plaintiff   :
             :  (Judge Munley)
    v.   :
             :
IBEW LOCAL UNION NO. 45,  :
           Defendant   :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court are Defendant IBEW Local Union No. 45's ("IBEW") Motion for Summary Judgment, and Plaintiff James M. Fitzpatrick's Motion to Strike the Motion for Summary Judgment. These matters have been fully briefed and argued, and therefore are ripe for disposition. For the following reasons, we will deny the Motion to Strike and grant the Motion for Summary Judgment.

**I.   Background**

    **A.   Factual Background**[1]

Plaintiff was employed by National Mobile Television ("NMT") as a driver/technician, beginning on December 1, 2001. (Doc. 63, Pl. Ex. R. at ¶ 9 ("Pl. Aff."), Doc. 63, Pl. Ex. A. at 12-13 ("Pl. Dep.")). He was a member of Defendant IBEW. NMT hired him for a probationary period of six months. (Pl. Aff. at ¶ 13). On his first trip as a driver for NMT, he was involved in an accident at Veterans Stadium in Philadelphia,

---

[1] The following facts are reproduced in large part from the background facts in our March 17, 2005 summary judgment opinion.

Pennsylvania. (Pl. Dep. at 29-32). He was backing up in his truck and hit a street sign mounted on a light pole. (Pl. Aff. at ¶ 44). The accident put a "small scratch" in the paint of the vehicle. (Id.). Plaintiff could not see the sign in his truck mirrors because of the way the sign was mounted on the pole and because the sign was twelve feet off the ground. (Id.). Plaintiff reported this incident to his manager, Bob Baker. (Id. at ¶ 47). Baker agreed that the damage was "minor." (Doc. 49 Baker Decl. at ¶ 5). Baker, however, determined that the accident was preventable because Plaintiff "could either have gotten out of the truck to determine that the path was clear or could have had another individual watch him back up to ensure that he did not hit anything." (Id.).

In March or April 2002, in the course of his employment, Plaintiff was involved in a reservation dispute with an employee of a Hampton Inn in Juno Beach, Florida. (Pl. Aff. at ¶ 57). As Plaintiff exited the lobby of the Hampton Inn, he stated, "I have stayed at hotels owned by Indian people before and I have never to this day including today, been completely satisfied with the stay." (Id. at ¶ 74). An NMT official questioned him regarding the incident, and Plaintiff explained that he had made this statement. (Id. at ¶¶ 79-80). Plaintiff signed an apology letter composed by an NMT official, but asserts that the company pressured him into signing it and that he had legitimate complaints. (Id. at 82-88).

In June of 2002, Plaintiff again backed into a stationary object. (Pl. Dep. at 35-36). On this occasion, Plaintiff was backing his truck into a garage at NMT's Sommerville New Jersey facility, and the garage door was not fully opened, and he backed the truck into the

garage door. (Id.). Plaintiff claims the door "would not open to its full 14 foot height" but he proceeded to back the truck up anyway. (Pl. Aff. at ¶ 96). The fiberglass fairing on the truck was cracked, and the garage door was dented. (Id. at ¶ 96-97). As with the first accident, Baker determined that Plaintiff could have avoided the contact by exiting the truck to discern whether the path was clear or by enlisting another individual to watch him back up to ensure that he did not hit anything. (Baker Decl. at ¶5). Plaintiff reported the incident to Paul Wollack, the manager of the facility who witnessed the accident. (Pl. Aff. at ¶ 101, 108). Plaintiff did not report the accident to any other manager. (Pl. Dep. at 39-42). Following this accident, NMT suspended Plaintiff for the week of Sunday July 21 through Saturday July 27, 2002 without pay for failure to report the damage to an appropriate management supervisor. (Doc. 63 Pl. Ex. I; Pl. Dep. at 49 ln. 19-23).

On August 11, 2002, Plaintiff had a third accident. (Pl. Aff. at ¶ 129). He was driving a truck on a narrow street that was part of the grounds of Yankee Stadium in New York, New York. (Id. at ¶ 135). At the time, his "moto-mirror" was not functional. (Id. at ¶ 131). The moto-mirror is a mirror that pivots to allow the driver to view objects around the vehicle that would otherwise be out of the purview of the mirrors. (Id. at ¶ 131). At the end of the street, Plaintiff needed to make a wide turn to exit the stadium grounds. (Id. at ¶ 135). Plaintiff was outside of his vehicle moving police barricades when a young man stopped his vehicle next to the passenger side of the truck near the curb. (Id. at ¶ 138, 140). The young man asked if he could "squeeze between the truck and the curb and [Plaintiff] told him he

should wait or move." (Id. at ¶ 141). Plaintiff told him he should wait or move because the street was not wide enough for both vehicles. (Id. at ¶ 143). Plaintiff returned to his truck, and made a wide swing to execute his turn because he observed that the young man had moved his car. (Id. at ¶ 147). After Plaintiff made the turn, the young man asserted that Plaintiff hit his car. (Id. at ¶ 148). Plaintiff observed that the young man's rear plastic bumper needed to be replaced. (Id. at ¶ 155). Plaintiff assumed that the young man must have tried to back up while Plaintiff was making his turn, otherwise the accident would not have occurred. (Id. at ¶ 149; Pl. Dep. at 69 ln. 11-16). Plaintiff reported the accident to Bob Baker. (Pl. Aff. at ¶ 151). Baker determined that the accident could have been prevented had Plaintiff waited long enough for the young man to move his car completely out of harm's way before moving the truck. (Baker Decl. at ¶6).

NMT terminated Plaintiff on August 13, 2002, two days after the Yankee stadium accident. (Pl. Aff. at ¶ 152). Bob Baker determined that Plaintiff should be terminated after this accident. (Baker Decl. at ¶ 8). Plaintiff was born on May 11, 1951, and therefore was fifty-one years old when he was terminated. (Pl. Aff. at ¶ 1).

Shortly after his termination, Plaintiff spoke with Rick Rogers, the Business Representative of Defendant IBEW, about filing a grievance against NMT. (Rogers Decl. ¶ 10). IBEW informed Plaintiff that filing a grievance would be futile because success was unlikely given Plaintiff's short tenure, history of accidents, and the Hampton Inn incident where he made a racial remark.

### B.     Procedural Background

On May 12, 2003, Plaintiff filed suit alleging that NMT fired him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA") 43 PA. STAT. 951 et seq. Additionally he advanced a claim against IBEW asserting that they discriminated against him on the basis of age in violation of the ADEA.  On July 24, 2003, IBEW filed a motion to dismiss for lack of personal jurisdiction.  On March 8, 2004, we denied IBEW's motion to dismiss on the grounds that it was premature, and allowed it leave to re-file following discovery.   We provided the parties sixty days to conduct discovery on the issue of personal jurisdiction and allowed IBEW ten days following this period to re-file the motion.

Thereafter, on May 4, 2004, we established the case management deadlines, providing that discovery on the remaining issues was due on July 20, 2004, and dispositive motions were to be filed on or before August 15, 2004.

On May 12, 2004, IBEW re-filed its motion to dismiss on jurisdictional grounds.  On August 11, 2004, NMT filed a motion for summary judgment, arguing that Plaintiff could not create a genuine issue of material fact that he was fired because of his age.  On March 17, 2005, we granted NMT's motion for summary judgment and denied IBEW's motion to dismiss in the same memorandum.  On May 11, 2005, IBEW filed the instant motion for summary judgment, arguing that Plaintiff has failed to establish a genuine issue of material fact that it declined to represent him in a grievance proceeding because of his age.

5

**II.     Jurisdiction**

The Court exercises jurisdiction over this dispute pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. Pennsylvania law applies to those claims considered pursuant to supplemental jurisdiction. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

**III.     Standard of Review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

 In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it

might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**IV.     Discussion**

**A.      Motion to Strike**

Plaintiff argues that we should strike the Motion for Summary Judgment because IBEW filed it nine months after the dispositive motions deadline established by this Court. IBEW responds that its motion to dismiss for lack of personal jurisdiction was timely, and it did not file a timely motion for summary judgment because it was waiting for this Court to resolve the personal jurisdiction issue.  Thus, although IBEW never requested an extension of the summary judgment deadline, it filed the instant Motion within sixty days of this Court's resolution of the personal jurisdiction issue.

As a general rule, a Motion for Summary Judgment is not subject to a motion to strike because it is not a pleading.  See Manchester Manufacturing Acquisitions, Inc., v. Sears, Roebuck, and Co., 909 F. Supp. 47, 54 (D.N.H. 1995) (noting that the Federal Rules of Civil

7

Procedures authorize Motions to Strike Pleadings, but a motion for summary judgment is not a pleading) (citing Resolution Trust Corp., v. Blasdell, 154 F.R.D. 675, 683 (D. Ariz. 1993); Weiss v. PPF Indus. Inc., 148 F.R.D. 289, 291-92 (M.D. Fla. 1993)).

Additionally, we find that allowing IBEW to file a motion for summary judgment will not prejudice Plaintiff. Plaintiff has produced no reason why he would be prejudiced nor articulated any specific prejudice. Although IBEW should not have assumed that the court deadlines would toll pending our resolution of the personal jurisdiction matter, we do note that IBEW's actions give no indication of bad faith or willful misconduct. Furthermore, the summary judgment standard mirrors the standard for a judgment as a matter of law under Federal Rule of Civil Procedure 50(a), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986), and therefore, at present, we are faced with the same issue that IBEW is free to raise again following Plaintiff's case in chief. Thus, resolution of the issues presently before the Court would save all parties involved the expense of presenting Plaintiff's case-in-chief at trial and then resolving a potential motion pursuant to 50(a). Therefore, based on the facts before the Court, we find that striking the summary judgment motion would be a draconian result of IBEW's untimeliness, and we will deny the Motion.

**B.   Summary Judgment**

Plaintiff argues that he can present circumstantial evidence of discrimination under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2]

---

[2] We will analyze Plaintiff's ADEA and PHRA claims under the same legal framework. Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567 (3d Cir. 2002) (recognizing that ADEA and

Under McDonnell Douglas, the plaintiff must first make a prima facie showing of discrimination. Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3d Cir. 1999). A plaintiff can establish a prima facie case by showing that: (1) he was a member of a protected class, *i.e.*, that he was over 40; (2) was qualified for the position; (3) suffered an adverse employment action despite his qualifications; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). If the plaintiff cannot establish these elements, the defendant is entitled to judgment as a matter of law. Pivirotto 191 F.3d at 352 n.4. If the plaintiff does establish a prima facie case, the burden of production shifts to the defendant and requires that he produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Id. Once the defendant does so, the plaintiff must prove by a preponderance of the evidence that the proffered nondiscriminatory reason was pretext and discriminatory animus was the actual reason for the employment action. Id. The plaintiff can create a genuine issue of material fact that the nondiscriminatory explanation is pretext "only if he submits evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Connors v. Chrysler Financial Corp., 160 F.3d 971, 974 n.2 (3d Cir.

---

PHRA claims are analyzed under the McDonnell Douglas test).

9

1998).

IBEW argues that Plaintiff can neither establish a prima facie case of discrimination nor demonstrate that its legitimate non-discriminatory reasons are pretext for discrimination. We need not address Plaintiff's prima facie case because he clearly cannot demonstrate that IBEW's reasons for declining to represent him are pretext.

IBEW argues that it declined to represent Plaintiff because a grievance would have been futile given his accident record and his racial comment.  Plaintiff argues that this reason is pretext for discrimination because IBEW never inquired into the truth of the allegations against him or spoke with him about the merits of filing a grievance.  (Fitzpatrick Aff. ¶ 4). Plaintiff does not dispute, however, that IBEW was aware of his disciplinary record.  The appropriate question is not the factual accuracy of Plaintiff's disciplinary record, but rather, whether IBEW actually believed and relied upon the allegations that Plaintiff was involved in three accidents and a racial incident.  Fuentes v. Perskie, 32 F.3d 759, 766-67 (3d Cir. 1994). Although IBEW may not have conducted the best possible investigation into the background of Plaintiff's disciplinary record,[3] there is no evidence that it did not actually rely on these allegations in determining that a grievance would be futile.  Therefore, Plaintiff has produced insufficient evidence to allow a reasonable jury to disbelieve IBEW's articulated reasons and

---

[3] A union does not have a duty to thoroughly investigate a grievance before determining whether to represent an employee, but instead its conduct must not be "arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967).  Thus, absent evidence that IBEW did not rely on the facts it purports to, we take no adverse inference from its failure to interview Plaintiff.

we will grant summary judgment.[4]  An appropriate order follows.

---

[4] Plaintiff also argues that he has produced evidence that could allow a reasonable jury to find that age discrimination was more likely than not the cause of his termination. He argues that IBEW represented other individuals, Ray Hyle, Kenneth Hearn, Anthony Reda, Romi Jagminas, and Craig Johnson, faced with far more serious allegations. (Pl. Second Supp. Aff. ¶ 5). This does not give rise to an inference of age discrimination. When IBEW represented these individuals, Hyle was 56, Hearn was 50, Reda was 53, Jagminas was 55, and Johnson was 35. (Rogers Decl. ¶ 4-6). Although one of these men was below the protected age, four of the give were over forty, and three of them were older than Plaintiff. Furthermore, none of these men had prior incidents of discipline with NMT when IBEW represented them in grievance proceedings. Thus, these men were not similarly situated younger individuals and IBEW's decision to represent these individuals and not Plaintiff in no way raises an inference of age discrimination.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES M. FITZPATRICK,** | : | No. 3:03cv836 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **IBEW LOCAL UNION NO. 45,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **ORDER**

**AND NOW**, to wit, this 24th day of January 2006, Plaintiff's Motion to Strike (Doc. 98) is hereby **DENIED** and Defendant's Motion for Summary Judgment (Doc. 92) is hereby **GRANTED**. The Clerk of Court is hereby directed to enter judgment on behalf of the defendants.

                                                   **BY THE COURT:**

                                                   **s/ James M. Munley**
                                                   **JUDGE JAMES M. MUNLEY**
                                                   **United States District Court**